UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | Civil Action No.  SA-12-CR-4(1)-XR |
| | § | |
| SALVADOR SANCHEZ-CERVANTES, | § | |
| | § | |

## ORDER

On this date, the Court considered Defendant Salvador Sanchez-Cervantes's Motion to Dismiss the Indictment (docket no. 17) and the Response and Reply thereto.  After careful consideration, the Court will deny the motion.[1]

## I. Background

Movant/Defendant Sanchez-Cervantes is indicted on one count of violating 8 U.S.C. § 1326, specifically by entering and being found in the United States on December 4, 2011 after having been previously denied admission, excluded, deported, and removed on or about February 14, 2008. Defendant seeks to dismiss the indictment on the basis that the February 14, 2008 reinstatement order and the prior November 22, 2004 expedited order of removal on which the reinstatement order was based are invalid.  He asserts that these orders were obtained in violation of his due process rights and

---

[1] The Court notes that, in deciding this motion, the Court relied on the arguments of the parties, many of which were not supported by any evidence, so long as the arguments were not disputed.  If in fact some of the arguments are disputed, the affected party should notify the Court and/or move for reconsideration of this Order, specifying the dispute and what evidence supports a different conclusion.  Further, the motion is denied without prejudice because many of the issues are decided on a lack of proof rather than as a matter of law.  Should Defendant file a supplemental motion or motion for reconsideration, such motion must set forth (1) what due process violation occurred in the removal proceeding and (2) had that violation(s) not occurred, what different result would likely have been obtained and why.  In making this latter showing, Defendant must cite to the specific statute or regulation that would have provided such relief and provide arguments and evidence demonstrating that Defendant could likely have obtained that relief.  Defendant should also demonstrate that the motion to dismiss is not precluded by § 1326(d) as discussed in Section II.E.

1

right to effective counsel, and that the 2004 expedited order of removal "is fatally flawed and invalid since the order was in violation of the law upon which it was based."

Defendant asserts that he has continuously resided in the U.S. since 1995, with very limited and brief departures.  According to the Government, Defendant was convicted of illegal entry in violation of 8 U.S.C. § 1325 on March 6, 1999, and he was allowed to voluntarily depart to Mexico that same date.  At some point, he returned to the U.S., and on November 21, 2004, he was found by the border patrol at Zacatosa Ranch, north of Laredo, Texas, and was detained.  In an interview, Defendant told the border patrol officers that he had entered the U.S. the day before by wading across the Rio Grande River.  Because he was found in such proximity to the border and less than 24 hours after entry, the border patrol agents treated him as an applicant for admission subject to expedited removal proceedings under 8 U.S.C. § 1225(b)(1) rather than placing him in ordinary removal proceedings under § 1229a.  Defendant was removed on November 22, 2004, but again returned to the U.S.  On February 14, 2008, Defendant was encountered by ICE officers in San Antonio, and was again removed through a reinstatement of the expedited removal order that same day.[2]  Defendant again returned, and was detained on December 4, 2011, leading to the present indictment for illegal reentry after having been removed on February 14, 2008.

## II. Analysis

The crime of illegal reentry under § 1326 requires the Government to prove that the alien "has

---

[2]A reinstatement of a prior removal order is governed by § 241(a)(5) of the INA, 8 U.S.C. § 1231(a)(5), which provides:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding" and "thereafter enters, attempt to enter, or is at any time found in, the United States."  The indictment relies upon Defendant's February 14, 2008 reinstated expedited removal order, which Defendant seeks to collaterally attack as invalid. Defendant challenges the validity of both the February 2008 reinstatement and the November 2004 expedited removal orders as obtained in violation of his right to due process and right to counsel. Defendant further contends that "the expedited order is fatally flawed and invalid since the order was in violation of the law upon which it was based."

In *United States v. Mendoza-Lopez*, 481 U.S. 828, 839 (1987), the Supreme Court held that a defendant may collaterally attack a prior deportation order "where the deportation proceeding effectively eliminates the right of the alien to obtain judicial review."  This holding was essentially codified in section 1326(d), which provides that "[i]n a criminal proceeding under this section, an alien may not challenge the validity of the deportation order . . . unless the alien demonstrates that – (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair."  8 U.S.C. § 1326(d).

The Fifth Circuit, in interpreting *Mendoza-Lopez*, has formulated three distinct but related requirements that must be met by an alien wishing to challenge the use of a prior deportation or removal order in a prosecution under § 1326: the alien must establish that (1) the prior proceeding was "fundamentally unfair"; (2) the hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review of the order; and (3) the procedural deficiencies caused the

3

alien actual prejudice.  *United States v. Lopez-Vasquez*, 227 F.3d 476, 483 (5th Cir. 2000).  If the alien fails to establish any prong of the three-pong test, the Court need not consider the other prongs. *United States v. Mendoza-Mata*, 322 F.3d 829, 832 (5th Cir. 2003).

Defendant argues that the expedited removal was fundamentally unfair because he should not have been placed in expedited removal proceedings instead of removal proceedings under § 1229a. Defendant argues that, at the time of the 2004 expedited removal, he had resided continuously in the U.S. for over two years, and was thus entitled to an attorney and to go before an immigration judge. Defendant asserts that he was prejudiced by being placed in expedited removal proceedings because, had he been placed in removal proceedings before an immigration judge, he could have sought a voluntary departure under § 1229c or to withdraw his application for admission under § 1225(a)(4). Had he obtained either of these forms of relief, Defendant contends, he could now apply for adjustment of status.

Defendant also argues that he was denied due process because the expedited removal proceedings were not translated, and he did not understand that he was signing an expedited removal form.  Defendant further contends that the expedited removal proceedings inherently violate due process when applied to non-arriving aliens who have entered the United States.

The Government argues that Defendant was properly placed in expedited removal proceedings because he met the criteria for expedited removal, that he did not suffer any due process violations, and that he cannot demonstrate prejudice.

**A. Whether § 1225(b)(1)(D) precludes a collateral attack**

The Court must first consider whether 8 U.S.C. § 1225(b)(1)(D) precludes Defendant's motion.  Section 1225(b)(1)(D) provides: "In any action brought against an alien under section

1325(a) of this title or section 1326 of this title, the court shall not have jurisdiction to hear any claim attacking the validity of an order of removal entered under subparagraph (A)(i) or (B)(iii)."   Thus, although certain collateral attacks on prior removal orders are permitted under § 1326(d), no collateral attack is permitted if the prior removal order was an expedited removal order under § 1225(b)(1)(A)(i), as was the 2004 expedited removal order in this case.[3]  The Government contends that this Court therefore lacks jurisdiction to hear Defendant's motion.

In *Lopez-Vasquez*, the Fifth Circuit held that, although section 1225(b)(1)(D) deprives district courts of jurisdiction to determine whether the prior removal was invalid, it does not preclude district courts "from determining that the requisites of a *Mendoza-Lopez* claim" are *not* met.  *Lopez-Vasquez*, 227 F.3d at 486.  The Fifth Circuit did not decide whether it precludes a district court from dismissing a § 1326 prosecution on the basis that the Defendant has properly established a valid *Mendoza-Lopez* claim respecting the prior removal or deportation or whether, if section 1225(b)(1)(D) has that effect, it is unconstitutional.   *Id.*   The Ninth Circuit, however, has held that § 1225(b)(1)(D) is unconstitutional to the extent it precludes review of the underlying order in a criminal proceeding. *United States v. Barajas-Alvarado*, 655 F.3d 1077 (9th Cir. 2011).  The Court concludes that it has jurisdiction to decide Defendant's motion.[4]

---

[3] As noted below, the indictment in this case is based on the 2008 reinstatement order, not the 2004 expedited removal order.  It appears that § 1225(b)(1)(D) would not bar a collateral attack on the 2008 reinstatement order. However, because the 2008 order reinstates the 2004 expedited removal order, Defendant asserts challenges to both orders, and § 1225(b)(1)(D) would apply to a collateral attack on the 2004 expedited removal order.

[4] Although not raised by the Government, section 1231(a)(5) (governing reinstatement orders) also precludes review of the reinstated order of removal ("the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed").  However, the Court finds that it has jurisdiction to consider Defendant's collateral attack on the reinstated order under *Mendoza-Lopez* to the extent it forms the basis for the § 1326 violation.

**B. Whether Defendant was properly subject to expedited removal?**

Defendant's primary argument is that he was not properly subject to expedited removal in 2004 because he was "physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility."  *See* 8 U.S.C. § 1225(b)(1)(A)(iii).  Thus, he essentially contends that he was not an alien to which expedited removal could be applied.  He also argues that the regulation expanding application of expedited removal proceedings to aliens found within 14 days of entry and 100 miles of a U.S. land border was not intended to apply to him, but was intended to apply only to "OTM's" (other than Mexicans).

Section 1225 governs inspection of an applicant for admission, which includes "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) . . ."  8 U.S.C. § 1225(a)(1).  It is undisputed that, at the time Defendant was detained in 2004, he was present in the U.S. and had never been admitted.  Thus, he was "an applicant for admission."

All applicants for admission "shall be inspected by immigration officers."  *Id.* § 1225(a)(3).  If the immigration officer determines that an alien is arriving (*i.e.*, is an "arriving alien") or "is described in clause (iii)" of § 1225(b)(1) and is inadmissible,[5] the officer "shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution."  *Id.* § 1225(b)(1)(A)(i).  This is referred

---

[5] Defendant does not dispute that he was inadmissible at the time of the 2004 expedited removal.

to as "expedited removal."[6]  Other  aliens present in the U.S. who have not been admitted or paroled

are detained for a proceeding before an immigration judge under § 1229a if the inspecting

immigration officer determines that the alien is not clearly and beyond a doubt entitled to be admitted.

8 U.S.C. § 1225(b)(2).

Defendant claims that he was improperly placed in expedited removal proceedings when he

should have been placed in proceedings under § 1229a.  As noted, inadmissible arriving aliens and

aliens "described in clause (iii)" may be subject to expedited removal.  Clause (iii), subclause (II)

provides that "[a]n alien described in this clause is an alien . . . who has not been admitted or paroled

into the United States, and who has not affirmatively shown, to the satisfaction of an immigration

officer, that the alien has been physically present in the United States continuously for the 2-year

period immediately prior to the date of the determination of inadmissibility under this subparagraph."

Thus, expedited removal does not apply to aliens present in the United States who demonstrate to the

immigration officer that they have been continuously physically present in the U.S. for two years.  *See*

*id.* § 1225(b)(1)(A)(iii)(II); 8 C.F.R. § 1235.5(b)(1)(ii) ("An alien who was not inspected and admitted

or paroled into the United States but who establishes that he or she has been continuously present in

the United States for the 2-year period immediately prior to the date of determination of admissibility

shall be detained in accordance with section 235(b)(2) of the Act for a proceeding under section 240

_____

[6] "From April 1997, to November 2002, expedited removal only applied to arriving aliens at ports of entry. In November 2002, it was expanded to aliens arriving by sea who are not admitted or paroled. Subsequently, in August 2004, expedited removal was expanded to aliens who are present without being admitted or paroled, are encountered by an immigration officer within 100 air miles of the U.S. southwest land border, and can not establish to the satisfaction of the immigration officer that they have been physically present in the United States continuously for the 14-day period immediately preceding the date of encounter. In January 2006, expedited removal was reportedly expanded along all U.S. borders."  Beth Lyon, *The Unsigned United Nations Migrant Worker Rights Convention: An Overlooked Opportunity to Change the "Brown Collar" Migration Paradigm*, 42 N.Y.U. J. INT'L L. & POL. (Winter 2010) at n.147 (citing Alison Siskin & Ruth Ellen Wasem, CRS Report for Congress: Immigration Policy on Expedited Removal of Aliens 2 (2007), available at http:// www.rcusa.org/uploads/pdfs/2007,0402-crs.pdf.)).

of the Act.").

However, clause (iii), subclause (I) provides that the Secretary of Homeland Security may apply expedited removal "to any or all aliens described in subclause (II) as designated by the [Secretary]" and "[s]uch designation shall be in the sole and unreviewable discretion of the [Secretary] and may be modified at any time." 8 U.S.C. § 1225(b)(1)(A)(iii)(I).  Thus, the Secretary may designate "any or all aliens described in subclause (II)" for expedited removal, and the designation becomes effective upon publication of a notice in the Federal Register.[7]  Exercising this authority, the Secretary published a notice in the Federal Register on August 11, 2004, authorizing the Department of Homeland Security to place in expedited removal proceedings any and all aliens encountered within 14 days of entry without inspection and within 100 air miles of the U.S. land border. Notice Designating Aliens for Expedited Removal, 69 Fed. Reg. 48878 (August 11, 2004).

The regulation states that

> DHS has a pressing need to improve the security and safety of the nation's land borders, and expanding expedited removal between ports of entry will provide DHS officers with a valuable tool to meet that objective.  Presently DHS officers cannot apply expedited removal procedures to the nearly 1 million aliens who are apprehended each year in close proximity to the borders after illegal entry.  It is not logistically possible for DHS to initiate formal removal proceedings against all such aliens.  This is primarily a problem along the southern border, and thus the majority of such aliens are Mexican nationals, who are "voluntarily" returned to Mexico without any formal removal order.  Based upon anecdotal evidence, many of those who are returned to Mexico seek to reenter the U.S. illegally, often within 24 hours of being voluntarily returned (it is not uncommon for DHS officers to apprehend the

---

[7] 8 C.F.R. § 235.3(b)(1)(ii) ("The Commissioner shall have the sole discretion to apply the provisions of section 235(b)(1) of the Act, at any time, to any class of aliens described in this section. The Commissioner's designation shall become effective upon publication of a notice in the Federal Register.").  According to 69 Fed. Reg. 48877, 48878, the Attorney General provided that her designation authority would be exercised by the Commissioner of the former INS, and pursuant to portions of the Homeland Security Act of 2002, the authority of the Commissioner and the Attorney General in accordance with 8 U.S.C. § 235(b)(1)(A)(iii) and 8 C.F.R. 235.3(b)(1)(ii) was transferred to the Secretary of Homeland Security, and references to the Attorney General or the Commissioner in the statute and regulations are deemed to refer to the Secretary.

same individual many times over a span of several months).

The regulation further states that "DHS plans under this designation as a matter of prosecutorial discretion to apply expedited removal only to (1) third-country nationals and (2) to Mexican and Canadian nationals with histories of criminal or immigration violations, such as smugglers or aliens who have made numerous illegal entries." It further states that "certain aliens . . . may possess equities that weigh against the use of expedited removal proceedings. Accordingly, in appropriate circumstances and as an exercise of prosecutorial discretion, officers will be able to permit certain aliens described in this notice to return voluntarily, withdraw their application for admission, or to be placed into regular removal proceedings under section 240 [§ 1229a] of the Act in lieu of expedited removal proceedings." Last, it states that "[i]t is anticipated under this designation that expedited removal will be employed against those aliens who are apprehended immediately proximate to the land border and have negligible ties or equities in the U.S."

The Government contends that Defendant was properly placed in expedited removal proceedings because he does not dispute that he was encountered within 14 days of illegally crossing the border and within 100 miles of the border, thus meeting the requirements of the regulation. The regulation was effective August 11, 2004, and Defendant was detained November 21, 2004. Further, although Defendant argues that the expanded expedited removal regulation was intended to apply only to "OTM's," the language of the regulation proves this untrue. Rather, it expressly states that it is intended to be applied to Mexican nationals "with histories of criminal or immigration violations, such as smugglers or aliens who have made numerous illegal entries." According to the record created by the immigration official at the time, "As per station policy, [Defendant] will be set up for Expedited Removal for having been previously convicted for 8 U.S.C. § 1325 and his prior criminal

9

record." Docket no. 21-1. Further, Defendant does not contest the Government's assertion that he has made numerous illegal entries. Thus, it is undisputed that he met the factual criteria for expedited removal under the regulation.

Defendant argues, however, that the regulation should not apply to individuals such as himself, who have established a residence here and in fact have resided continuously in the United States for two years. Rather, he contends that the regulation's language clearly shows that it was "written under statutory authority to exclude arriving aliens" and not those who have lived in the U.S. for many years and have ties to the U.S. Defendant contends that brief departures from the United States to return to Mexico should not interrupt the two-year period, and thus the fact that he had entered the U.S. within the prior 14 days does not negate the fact that he satisfied the 2-year residency requirement. Rather, he contends, he had resided in the U.S. for seven years from the date of his first entry in 1994 until 2001 when he was removed. Docket no. 28.[8]

Under the plain language of the statute, the alien must affirmatively show that he "has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(iii)(II). Thus, Defendant must show he was continuously physically present in the U.S. from November 21, 2002 to November 21, 2004. The regulations implementing expedited removals state that "any absence" from the U.S. shall serve to break the period of continuous physical presence. 8 C.F.R. § 235.3(b)(1)(i); 8 C.F.R. § 1235.3(b)(1)(ii) ("Any absence from the United States shall serve to break the period of continuous

---

[8] Although in the reply brief Defendant asserts U.S. residence beginning in 1994, in his motion he states that he has been continuously residing in the U.S. since 1995. Further, in the reply brief he states he was removed in 2001, but the Government states that Defendant was removed twice in 1998, seven times in 1999, and once in 2004 (and of course also in 2008), and makes no mention of any 2001 removal.

physical presence."). The Government asserts in its response that Defendant had been returned to Mexico on November 17, 2004, shortly before he was detained. Further, it appears undisputed that Defendant crossed the border on November 21, 2004. Thus, Defendant was not continuously physically present for two years prior to being found inadmissible, rendering him eligible for expedited removal.

Defendant argues that the regulation's interpretation of the presence requirement is "illogical since anyone apprehended within 10 miles of the border just returned from Mexico after a brief departure" would be subject to expedited removal even if they had resided in the U.S. for more than two years. However, he presents no legal authority for the proposition that the Secretary could not interpret the continuous physical presence in this manner,[9] and the regulations are entitled to deference. *See Mireles-Valdez v. Ashcroft*, 349 F.3d 213, 215 (5th Cir. 2003) ("Because Congress has delegated to the Attorney General significant responsibility over immigration matters, his construction of immigration statutes is entitled to considerable deference."). Nor has Defendant established that the Secretary could not rationally differentiate between aliens who have been present for two years without any absence (subjecting them to regular removal proceedings) and those who choose to make a brief, voluntary departure to Mexico (subjecting them to expedited removal). *Cf. Flores-Ledezma v. Gonzales*, 415 F.3d 375 (5th Cir. 2005) (upholding Attorney General's statutory discretion to choose between expedited removal proceedings, under which a non-legal permanent

---

[9] There is authority that brief departures do not break continuous physical presence for purposes of the 10-year requirement for cancellation of removal and adjustment of status. However, there is a specific provision in that section of the Act that states that "[a]n alien shall be considered to have failed to maintain continuous presence in the United States under subsections (b)(1) and (b)(2) of this section if the alien has departed from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days." 8 U.S.C. § 1229b(d)(2). There is no such provision in section 1225. Further, the Government argues that Defendant was returned to Mexico on November 17, 2004, and Defendant does not address whether this return would be sufficient to break continuous physical presence.

11

resident is prohibited from seeking hardship relief, and general removal proceedings).  Accordingly, Defendant fails to establish that he was improperly subjected to expedited removal proceedings, and thus fails to establish a due process violation on this basis.

## C. Prejudice analysis – expedited removal

The Government contends that Defendant suffered no prejudice because he was entitled only to the procedures set forth for expedited removal, and those procedures were complied with.[10] Specifically, the Government points to the record of the immigration officer of the encounter, and asserts that it demonstrates that the officer created a record of the encounter, read Defendant his rights, took his statement, informed him of the charges, and obtained a supervisor's concurrence. Thus, the Government contends that the regulations were complied with, and Defendant received all process that was due.

Defendant, on the other hand, argues that the expedited removal proceedings were not translated[11] and that the officer did not explain his rights.  As a result, Defendant contends, he believed he was getting voluntary departure.  Defendant also argues that, even if all mandated procedures are complied with, the expedited removal proceedings inherently violate due process.

Turning to Defendant's first argument, the Government concedes that an alien is entitled to

---

[10] The Government relies on *United States v. Lopez-Vasquez*, 227 F.3d 476 (5th Cir. 2000) to argue that Defendant was entitled to only such process as set forth in the regulations.  In that case, the Fifth Circuit stated that "[i]n the exclusion or inadmissibility context, only the process afforded by the Congress and the Executive is required."  *Id.* at 484.  Although the Court referred to "inadmissibility," the alien in that case was an arriving alien who had never gained entry.  Defendant persuasively argues that *Lopez-Vasquez* applies only to such arriving aliens, who are entitled to less due process than aliens who have entered the United States, even if illegally.  *Lopez-Vasquez* itself cites to Supreme Court and Fifth Circuit cases stating that aliens who have entered, even illegally, are entitled to due process under the Fifth Amendment.  *Id.*  The Court need not decide what level of due process must be afforded to aliens such as Defendant, however, because even if Defendant had received the process that he alleges he was due, he has not demonstrated prejudice.

[11] The regulations state that "[i]nterpretive assistance shall be used in necessary to communicate with the alien."  8 C.F.R. § 235.3(b)(2)(i); 8 C.F.R. § 1235.3(b)(2)(i).

at least whatever process has been created by Congress or the Executive.  Defendant argues that this process was not afforded him because the expedited removal proceedings were not translated and his rights were not explained to him.  But assuming this is true, Defendant must nevertheless establish prejudice as a result.  To make this showing, he must show a reasonable likelihood that, had the proceedings been translated and his rights explained to him, there would have been a different result.  A showing of prejudice means "there was a reasonable likelihood that but for the errors complained of the defendant would not have been" removed.  *Lopez-Vasquez*, 227 F.3d at 485.  In short, "if the Defendant was legally deportable and, despite the INS's errors, the proceeding could not have yielded a different result, the deportation is valid for purposes of section 1326." *Id.*  Thus, Defendant must show that, had the proceedings been translated or his rights explained, the immigration officer would not have placed him in expedited removal but would have either granted discretionary relief or placed him in regular removal proceedings.

The regulations establish that expedited removal is intended to apply to Mexican nationals with a history of criminal or immigration violations.  The evidence indicates that the immigration officer applied it to Defendant because he had a criminal history (a DWI conviction) and an immigration violation (a conviction under § 1325).  In addition, the regulations state that it is intended to apply to "aliens who have made numerous illegal entries," and Defendant has not disputed the Government's assertion that Defendant has made at least 10 illegal entries.  Expedited removal is utilized to "deter unlawful entry" and "make it possible to pursue future criminal prosecution against those aliens who continue to enter the U.S. in violation of law."  Thus, these factors all weigh in favor of the immigration officer's decision to place Defendant in expedited removal proceedings.

On the other hand, the regulations also state that "[i]t is anticipated under this designation that

13

expedited removal will be employed against those aliens who are apprehended immediately proximate to the land border and have negligible ties or equities in the U.S." and further "recognize that certain aliens, including . . . aliens who may be eligible for cancellation of removal under section 240A of the Act, for example, may possess equities that weigh against the use of expedited removal proceedings." Thus, the regulations allow immigration officers, "in appropriate circumstances and as an exercise of prosecutorial discretion," to permit "certain aliens described in this notice to return voluntarily, withdraw their application for admission, or to be placed into regular removal proceedings under section 240 of the Act in lieu of expedited removal proceedings." Defendant argues that he has certain equities that would weigh in favor of such relief.

In *United States v. Barajas-Alvarado*, 655 F.3d 1077 (9th Cir. 2011), the Ninth Circuit held that the defendant failed to establish that, had the expedited removal proceedings been translated, the immigration officer would have granted discretionary relief in the form of withdrawal of the application for admission. Looking to the regulations and the field manual intended to guide the officer's exercise of discretion, the court found the following factors to be relevant: (1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the ground of inadmissibility; (5) age or poor health of the alien; and (6) other humanitarian or public interest considerations. *Id.* at 1090. The court found that the defendant failed to show that the facts presented would have caused the immigration officer to exercise discretion in his favor.

Similarly, in *United States v. Barragan-Camarillo*, No. 10-50429, 2011 WL 5930388 (9th Cir. 2011), the Ninth Circuit held that the Defendant failed to show prejudice due to lack of counsel and lack of discretionary alternatives to expedited removal. The court held:

14

Barragan–Camarillo has not made a "'plausible showing that the facts presented
would cause the Attorney General to exercise discretion in his favor,'"
Barragan–Camarillo was detained by immigration officers only two days after
returning to Mexico following a previous finding that he was removable; he admitted
that he had entered the country illegally; and he was thirty years old and not in poor
health—all facts that cut against a grant of withdrawal of an application for admission.
These facts also make unlikely a grant of voluntary departure, which is based on a
weighing of favorable and unfavorable factors. Moreover, the major benefit for the
government of granting voluntary departure—not having to bear the costs of hearings
and removal—would not be present here, because Barragan–Camarillo was subject
to expedited removal and thus would not have received a hearing, and because he was
detained only seven miles from the Mexican border.

*Id.* at *2.  Similarly, Defendant points to no evidence or authority that indicates the immigration

officer would likely have opted to permit voluntary return, withdrawal of the application for

admission, or placement in regular removal proceedings, and because the factors considered by the

immigration officer under the regulations both weigh in favor and against expedited removal, Plaintiff

cannot show a reasonable likelihood that, had his rights been explained and the proceedings

translated, the result would have been different.[12]

Defendant further argues that the expedited removal proceedings inherently violate due

process insofar as the same officer interviews the alien, makes the charge of inadmissibility, makes

the final determination of removability, and enters the order with only the oversight of a supervisor

who gives approval over the phone.  He also complains that there is no right to counsel and there is

no independent interpreter other than the immigration officer who declares that he read the alien his

rights and translated the proceedings.

_____

[12] In addition, the Fifth Circuit has held that an immigration judge's failure to inform an alien of the availability
of discretionary relief is not a due process violation because the right is discretionary and confers no protected liberty
or property interest, and such reasoning seems equally applicable in this context. *See United States v. Lopez-Ortiz*, 313
F.3d 225, 231 (5th Cir. 2002).  The Ninth Circuit held in the expedited removal context in *Barragan–Camarillo* that
"[t]he immigration officer's failure to inform Barragan–Camarillo of the options of withdrawal of an application for
admission or voluntary departure was not prejudicial because both forms of relief are discretionary . . . ."  2011 WL
5930388 at *2.

In *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1086 n.10 (9th Cir. 2011), the Ninth Circuit held that it could not address general attacks on the expedited removal process, finding that such claims are limited to actions instituted in the United States District Court for the District of Columbia pursuant to § 1252(e)(3).[13]  Thus, it appears that this Court lacks jurisdiction to consider the general due process challenge to the expedited removal procedure.  However, the Court will consider whether, had Defendant received the process that he alleges was due, he can demonstrate prejudice, as required by *Mendoza-Lopez*.  Since this issue overlaps with Defendant's assertion that he should have been placed in regular removal proceedings and received the additional process provided in such proceedings, the Court addresses it in the next section.

**D. Prejudice analysis – assuming Defendant was entitled to regular removal proceedings or that expedited removal proceedings inherently violate due process**

Defendant asserts that he was prejudiced by the expedited removal proceedings because he should have been placed in ordinary removal proceedings under § 1229a, where he would have had an attorney and would have been able to request and likely obtain discretionary relief such as voluntary departure or withdrawal of application for admission, and would now be eligible for adjustment of status.  The Government argues that Defendant did not suffer prejudice because he would not have been entitled to any form of relief, and an immigration judge would have removed him.

In *Lopez-Vasquez*, the defendant argued that, had he been afforded due process, he would have

---

[13] Section 1252(e)(3), entitled "challenges on validity of the system," provides that "judicial review of determinations under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of – (i) whether such section, or any regulation issued to implement such section, is constitutional; or (ii) whether such a regulation, or a written policy directive, written policy guidelines, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law."  8 U.S.C. § 1252(e)(3).

been informed that he could have applied for voluntary departure under 8 U.S.C. § 1229c or withdrawn his application for admission under 8 U.S.C. § 1225(a)(4), but the defendant did not dispute the conclusion that he was inadmissible. 227 U.S. at 479-80. The district court found that the defendant was not prejudiced with regard to applying for voluntary departure because the Government had established that he would not have been allowed to voluntarily depart because he had previously been granted a voluntary departure.[14] With regard to withdrawal of the application for admission, the district court found no prejudice because this relief was purely discretionary and the defendant would not have been granted this relief because he had been previously convicted of an aggravated felony offense. The district court also rejected the defendant's argument on reconsideration that he would have been entitled to a future visa because his father was a legal permanent resident. The Fifth Circuit agreed that Lopez-Vasquez did not demonstrate prejudice.

To show prejudice, Defendant must show a reasonable likelihood that, had he been placed in regular removal proceedings or afforded more process, he would not have been removed. Defendant raises three arguments in this regard: (1) he would have been entitled to apply for voluntary departure under § 1229c; (2) he would have been permitted to withdraw his application for admission; and (3) he would be able to adjust his status.[15]

---

[14] 8 U.S.C. § 1229c(a) provides that the Attorney General may permit an alien voluntarily to depart the United States at the alien's own expense in lieu of being subject to removal proceedings. However, § 1229c(c) states that the Attorney General "shall not permit an alien to depart voluntarily under this section if the alien was previously permitted to so depart after having been found inadmissible under section 1182(a)(6)(A) of this title."

[15] Whether Defendant was prejudiced in terms of obtaining a different result must be judged based on the state of law at the time of the 2004 expedited removal proceedings. *See United States v. Villanueva-Diaz*, 634 F.3d 844, 852 (5th Cir. 2011). However, no party discusses what the law was in 2004 and whether it was materially different from the law now.

*Voluntary Departure*

Defendant argues that he would have been entitled to apply for voluntary departure under § "1229c(3)."[16]  "Voluntary departure is a discretionary form of relief that allows certain favored aliens—either before the conclusion of removal proceedings or after being found deportable—to leave the country willingly."  *Dada v. Mukasey*, 554 U.S. 1, 8 (2008).  The statute permits an alien to request, and the Attorney General to permit, voluntary departure either before the conclusion of removal proceedings, which is governed by § 1229c(a) (pre-conclusion voluntary departure), or at the conclusion of removal proceedings, which is governed by § 1229c(b) (post-conclusion voluntary departure).

"Voluntary departure . . . allows the Government and the alien to agree upon a *quid pro quo*." *Id.*  The Government is spared the burden and expense of detention and removal, and the alien avoids extended detention pending completion of travel arrangements, is allowed to choose when to depart (subject to certain constraints) and the country of destination, and "of great importance, by departing voluntarily the alien facilitates the possibility of readmission."  *Id.*  Thus, "an alien involuntarily removed from the United States is ineligible for readmission for a period of 5, 10, or 20 years, depending upon the circumstances of removal."  *Id.* at 11-12.  "An alien who makes a timely departure under a grant of voluntary departure, on the other hand, is not subject to these restrictions—although he or she otherwise may be ineligible for readmission based, for instance, on an earlier unlawful presence in the United States, see § 1182(a)(9)(B)(i)."  *Id.* at 12.

Both in 2004 and today, section 1229c permitted the Attorney General to allow pre-conclusion and post-conclusion voluntary departure.  However, in 2004, as now, section 1229c(c) also provided

---

[16] There is no § 1229c(3).  The Court presumes that Defendant means § 1229c(a)(3) or § 1229c(b)(3).

that the Attorney General may not grant voluntary departure "if the alien was previously permitted to so depart after having been found inadmissible under § 212(a)(6)(A)."[17]   The Government asserts (but does not provide evidence) that Defendant was convicted of illegal entry in violation of 8 U.S.C. § 1325(a) and was allowed to voluntarily depart on March 6, 1999, and that he was "allowed to depart voluntarily by immigration officers twice in 1998, seven (7) times in 1999 and once on November 17, 2004, for a total of ten (10) voluntary returns."   Defendant does not dispute that he had previously been allowed to voluntarily depart.   This fact would appear to render him ineligible for voluntary departure under § 1229c; however, neither party addresses the issue.   *See United States v. Vasquez-Lopez*, 227 F.3d 476, 480 (5th Cir. 2000) (noting that the district court found no prejudice because the Government had established that Lopez-Vasquez would not have been allowed to depart voluntarily because he had previously been granted a voluntary departure on March 29, 1997); *United States v. Vivanco-Gonzalez*, 286 Fed. App'x 483 (9th Cir. 2008) ("We conclude that Vivanco-Gonzalez cannot demonstrate prejudice from any due process violation because he also was removed in 1998, and he could not have been eligible for pre-hearing voluntary departure as to both removals.").

The BIA explained in *In re Arguellos-Campos* that "an alien is ineligible for voluntary departure under section 240B [1229c] if the alien was previously permitted to so depart after having been found inadmissible under section 212(a)(6)(A). Section 240B(c) of the Act. However, we note that an alien who received voluntary departure under section 244(e) of the Act in deportation proceedings may receive voluntary departure under section 240B. The new restrictions apply only if

_____

[17] Under § 212(a)(6)(A), an alien is inadmissible if present in the United States without having been admitted or paroled.  8 U.S.C. § 1182(a)(6)(A).

19

the alien was already permitted to depart voluntarily under section 240B." *In re Arguellos-Campos*, 22 I. & N. Dec. 811, 818 (B.I.A. 1999).  There is no evidence concerning the nature of the prior voluntary departure(s), and thus it is unclear whether section 1229c(c) would have barred a grant of voluntary departure.  Given that the alien bears the burden of showing prejudice, however, the Court concludes that the lack of evidence either way precludes a finding of prejudice.  *See United States v. Barajas-Alvarado*, 655 F.3d 1077, 1088 n.12 (9th Cir. 2011) ("Because the record is silent as to whether Barajas-Alvarado signed the back of the Form I-860 or was otherwise informed of the charges against him, Barajas-Alvarado did not carry his burden of proof on this claim and cannot establish the existence of a due process violation or prejudice.").

Turning to the issue of whether Defendant could have obtained pre-conclusion voluntary departure even if the § 1229c(c) bar does not apply, Defendant cites a case in which the Ninth Circuit found prejudice where the alien could plausibly have received pre-conclusion voluntary departure – *United States v. Alcazar-Bustos*, 382 Fed. App'x 568, 570 (9th Cir. 2010).[18]  The Ninth Circuit Court of Appeals cited *In re Arguelles-Campos*, 22 I. & N. Dec. 811, 817 (B.I.A.1999), and noted that, in deciding whether to grant pre-conclusion voluntary departure, the IJ may consider

> the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and other evidence of bad character or the undesirability of the applicant as a permanent resident .... [as well as] compensating elements such as long residence here, close family ties in the United States, or humanitarian needs.

The Court further noted that an IJ has "broader authority to grant" pre-conclusion voluntary departure than some other forms of immigration relief.  In deciding whether the defendant established a

---

[18] The Government fails to address whether Defendant would likely have received pre-conclusion voluntary departure.

likelihood of obtaining pre-conclusion voluntary departure, the Ninth Circuit compared the facts and equities of the case to other cases to determine the likely outcome.

Although Defendant cites *Alcazar-Bustos*, he cites to no other cases with facts similar to his that would tend to show that he would likely have obtained pre-conclusion voluntary departure.  Thus, without further evidence and briefing, the Court is unable to conclude that Defendant has established a reasonable likelihood that he would have obtained pre-conclusion voluntary departure.

Turning to post-conclusion voluntary departure, section 1229c provides that the IJ could enter an order granting voluntary departure in lieu of removal upon finding that: (1) the alien has been physically present in the U.S. for at least one year immediately preceding the date the notice to appear was served; (2) the alien is and has been a person of good moral character for at least 5 years immediately preceding the application for voluntary departure; (3) the alien is not deportable under § under section 1227(a)(2)(A)(iii) [aggravated felony convictions[19]] or section 1227(a)(4) [terrorists] of this title; and (4) the alien has established by clear and convincing evidence that the alien has the means to depart the United States and intends to do so.  8 U.S.C. § 1229c(b).

The Government contends that the Defendant would not have been eligible for this relief because Defendant had not been physically present in the U.S. for at least one year immediately preceding the date the notice would have been served, given that he had just crossed the border and had been returned to Mexico on November 17, 2004.  Defendant does not dispute that he had just crossed the border or that he had been returned to Mexico on November 17, 2004, nor does he provide any evidence or authority concerning the nature of the November 17, 2004 return or whether

---

[19] Although the record indicates that Defendant was convicted of a DWI, the Fifth Circuit held in 2001 that a Texas felony DWI offense is not an aggravated felony for purposes of section 1227(a)(2)(A)(iii).  *United States v. Chapa-Garza*, 243 F.3d 921, 927 (5th Cir. 2001).

it would break continuous physical presence for purposes of § 1229c(b).  Thus, Defendant fails to establish a reasonable likelihood that he was statutorily eligible for post-conclusion voluntary departure.

The Government contends that even if Defendant could satisfy the statutory requirements, it is highly unlikely that he would have been granted such relief given that "he did not have a means to immigrate legally to the United States" and "had been allowed to return to Mexico ten times" yet demonstrated "unwillingness to remain outside the United States."  Docket no. 21 at 7. n.4.  Defendant fails to counter this argument, and the Court finds the argument persuasive.

The Court therefore finds that Defendant has not shown a reasonable likelihood that an IJ would have granted him voluntary departure had he been placed in regular removal proceedings or had he been afforded other additional process in an expedited removal proceeding.

*Withdrawal of Application for Admission*

Defendant contends that, had he been placed in regular removal proceedings, he would have been permitted to withdraw his application for admission pursuant to § 1225(a)(4).  Section 1225(a)(4) provides that "[a]n alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States."  The implementing regulations further provide that the Attorney General may, in his or her discretion, permit any alien applicant for admission to withdraw his application in lieu of removal proceedings or expedited removal.  However, it provides that "nothing in this section shall be construed as to give an alien the right to withdraw his or her application for admission" and "[p]ermission to withdraw an application for admission should not normally be granted unless the alien intends and is able to depart the United States immediately."  Thus, this relief

22

is discretionary, and for the same reasons discussed previously, the Court finds that Defendant has failed to establish a reasonable likelihood that he would have received this relief.

*Adjustment of Status*

In his motion, Defendant contends that the expedited order of removal and his subsequent order of removal are prejudicial to his ability to adjust his status to a legal permanent resident *in the future* through a petition filed by his common-law wife.  It appears that, at the time of his removal, he was not married.  Whether he is prejudiced by the removal order in terms of seeking future relief does not appear to be the relevant inquiry, however; to establish prejudice for purposes of a collateral attack in a § 1326 proceeding, a defendant must show that, had he been placed in regular removal proceedings or afforded certain process, he would have obtained a different result *in that proceeding*. If the result of the proceeding would have been the same even if the proceeding had been fair in all respects, the fact that it prejudices him with regard to future relief would not appear to require dismissal of the indictment.

In any event, the Government argues that Defendant does not qualify for adjustment of status because he is not the beneficiary of an immigrant visa petition and does not appear to be eligible to receive one (citing 8 U.S.C. § 1255(a)) and is inadmissible as a lawful permanent resident for being present in the United States without admission or parole (citing 8 U.S.C. § 1182(a)(6)(A)(I)) and for having been unlawfully present in the United States for at least a year (citing 8 U.S.C. § 1182(a)(9)(B)).  The Government contends that, to be eligible for adjustment of status to that of a legal permanent resident, an alien must be admissible as an immigrant (citing 8 U.S.C. § 1255(a)), and therefore the grounds of inadmissibility contained in § 1182 apply even if the alien is physically present in the United States.  Defendant has not established that he would have been entitled to an

23

adjustment of status in 2004 or 2008 and thus avoided removal.  Nor does he establish that he would be eligible now or in the future, if that is a relevant inquiry.  Defendant cannot satisfy his burden simply by asserting that he might have been eligible for certain relief.

In his reply brief, Defendant argues that, "should the court grant the motion to dismiss Defendant arguably is entitled to apply for cancellation of removal since he now has been in the U.S. for [more] than ten years, notwithstanding his short departures and has dependents who would suffer exceptional and extreme hardship should he be removed."  Cancellation of removal is governed by § 1229b, and permits the Attorney General to cancel removal and adjust the status of certain permanent residents (§ 1229b(a)) and certain nonpermanent residents (§ 1229b(b)).  An nonpermanent resident who is inadmissible or deportable may qualify if the alien: (1) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application; (2) has been a person of good moral character during such period; (3) has not been convicted of certain offenses; and (4) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.  8 U.S.C. § 1229b(b)(1).  Again, whether Defendant may now be eligible for certain relief if the motion to dismiss is granted does not appear to be the appropriate inquiry for purposes of the motion to dismiss the indictment.  Rather, he must show that, had all required process been provided, he would not have been deported (either in 2004 or 2008).  He has not shown that, had he been permitted to go before an IJ in 2004 (or 2008), he would have obtained cancellation of removal and adjustment of status rather than removal.  Instead, he states only that he now "arguably is entitled to apply for cancellation of removal."  Docket no. 28 at 5.  This fails to satisfy his burden.

24

**E. Collateral Attack on Reinstatement Order**

This case is additionally complicated by the fact that the indictment relies not on the 2004 expedited removal order (to which most of the argument is directed), but on the 2008 reinstatement of the expedited removal order as the basis for the illegal reentry charge. A reinstated removal order may form the basis for a § 1326 charge. *See United States v. Nava-Perez*, 242 F.3d 277, 279 (5th Cir. 2001) (holding that second removal based on the reinstatement of a prior removal order is a separate removal from the original removal order and makes the alien subject to the enhanced penalty of § 1326(b)(2)). However, although § 1231(a)(5) precludes review of the underlying reinstated removal order (the 2004 order), the Fifth Circuit has held that the reinstated order (the 2008 order) is a final removal order that may be reviewed by the Court of Appeals on petition for review. *See United States v. Fuentes-Salgado*, 207 Fed. App'x 391, at *2 (5th Cir. 2001) ("This court would have had jurisdiction to consider a petition for review of Fuentes-Salgado's 1998 reinstatement order. *See Ojeda-Terrazas v. Ashcroft*, 290 F.3d 292, 295 (5th Cir. 2002) (holding that reinstatement orders under § 241(a)(5) can be reviewed)."). Thus, to the extent Defendant is asserting a collateral attack on the reinstated order that forms the basis of the indictment, it is not clear that he has exhausted available remedies as required by § 1326(d) or that the reinstatement procedures effectively eliminated his right to seek judicial review of the removal order as required by *Mendoza-Lopez*. *See Fuentes-Salgado*, 270 Fed. App'x at *2 (concluding that because judicial review of the reinstated order was available by petition for review, defendant did not establish that the reinstatement procedures effectively eliminated right to judicial review, and thus collateral attack on § 1326 charge failed). Defendant makes no argument that he was precluded from seeking review of the reinstated removal order. Accordingly, it appears that his motion may also be denied on this basis.

### III. Conclusion

Defendant's Motion to Dismiss Indictment (docket no. 17) is DENIED.  Defendant has failed to make the required showings under § 1326(d) and *Mendoza-Lopez*.

It is so ORDERED.

SIGNED this 17th day of April, 2012.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

26